THE FIRST NATIONAL BANK OF MOUNT PLEASANT v. CONGER.

1. **Mortgage:** AGREEMENT BETWEEN MORTGAGEES: PARTIES. The agreement between two mortgagees, in an action for the foreclosure of their mortgages, to share *pro rata* in the proceeds of the foreclosure sale, does not make them joint parties nor enable one to bind the other by a contract with the purchaser at the sale.

2. **Judicial sale:** ENFORCEMENT OF BID. The purchaser at a foreclosure sale agreed with a person claiming to represent the plaintiff, but who had in fact no authority so to do, that only the excess of his bid over a claim held by him against the property, should be required of him. The property was struck off to him and he subsequently sold the same to a third party. In a proceeding to enforce the bid it was *held*, that in order to avoid its payment he should have asked to have the bid set aside because of the mistake, and offered to place the parties in *statu quo*, or at least to account for the proceeds of the re-sale by him.

*Appeal from Washington District Court.*

THURSDAY, DECEMBER 4.

THIS is a suit in equity to enforce performance of a bid made at a judicial sale. The facts appear from the following record entry:

" The cause coming on for final hearing and a jury being waived, the case was tried by the court, and the court, at the request of the parties, makes a finding of the facts proved, which are as follows:

September 27, 1871, plaintiff obtained a decree in this court, against B. M. McCoy and others, foreclosing a mortgage covering 745 acres of land. At the time of the execution of this mortgage to plaintiff, to wit, October 22, 1870, there were of record two mortgages in favor of the defendant herein, one of date December 6, 1866, covering 320 acres of the land and securing a note of $5,000, and one of date September 7, 1867, on 160 acres of land, to secure a note of $3,000; also a mortgage on the whole in favor of the Farmers and Merchants' Bank of Washington, Iowa, of date September 22, 1870, to secure $8,000; and there were certain other judgments and

mortgage liens not necessary for the consideration of the case to be particularly described.

On the date of the execution of the plaintiff's mortgage, it was agreed in writing between plaintiff and the Farmers and Merchants' Bank, with the assent also of the mortgagee, that as between the two banks the mortgages held by them should be regarded as simultaneous, and the proceeds of any of the mortgaged premises should be applied in payment of their demands in proportion to the amounts.

In the foreclosure case, the Farmers and Merchants' Bank, this defendant, and certain other prior lien-holders were made parties defendant and duly served with notice of the pendency of the suit. The notice stated that the plaintiff claimed of each of them the foreclosure of the mortgage, describing it and giving the numbers of the land, and that the land be sold to satisfy plaintiff's claim, and that the interest of each of them in and to the said estate be forever barred, foreclosed and cut off, and that plaintiff have such other relief as in the petition prayed for. The portions of the petition referring to the rights or interests of said lien-holders were as follows: "That plaintiff claims of each and every of defendants the discovery, establishment and foreclosure of all their right, title, interest or demand, in or to the real estate in said mortgage described, * * * and represents on information and belief that the defendants (naming said lien-holders made parties) each have or pretend to have some lien or demand against said real estate, the exact amount, sum or character whereof plaintiff is unable to state; but it says and charges that it is important to the enforcement of the rights of plaintiff in said real estate under its mortgage, that the same be ascertained, established and foreclosed. * * * * And plaintiff prays there may be paid from the proceeds of the sale:

1. Any demand in favor of any defendants that may be established, that are prior to the mortgage of the Farmers and Merchants' Bank of Washington, and this plaintiff.

2. The claims of plaintiff, as herein prayed for, and the defendant, the Farmers and Merchants' Bank of Washington,

on said mortgages referred to as the same may be established, *pro rata* to the several sums found due thereon.

And if any sum remain, that the same may be distributed to the several defendants as they may be entitled thereto. That all the right, title, interest and demands of defendants, or either of them, in or to any of said real estate of whatsoever character, be, upon said sale, forever barred, foreclosed and cut off. And that plaintiff have such other relief as it may be entitled to."

The said defendants, except the Farmers and Merchants' Bank, made no appearance in the court. The decree recited the fact of their being duly served with notice and making default, and provided that the allegations of plaintiff's petition should be taken as true and confessed against them, and directed that the land be sold on special execution, and the proceeds to be applied *pro rata* to the payment of the judgment of plaintiff, which was $7,320 besides costs, and the mortgage of the Farmers and Merchants' Bank, on which there was found to be due $9,054.40; and if there was any balance that it should be held subject to the equities of the other defendants. And further provided, that " all the right, title, interest or claims of each and every of the other defendants herein of whatsoever character, in or to any of the real estate described in the mortgage, be forever barred, foreclosed and cut off."

October 16, 1871, a special execution was issued on said decree of plaintiff, describing all of the land, and directing the sale of so much thereof as should be necessary to satisfy plaintiff's judgment and making no reference whatsoever to any other lien or interest in the property. There had, prior to this, however, been an execution issued on one of the other judgments, and levied on an 80 of the land. The sheriff levied said special execution on all of said lands, advertised them for sale and caused them all to be appraised except ten acres, the appraisement being at the full value, and December 1, 1871, made the sale, and defendant bid off 415 acres for the aggregate sum of $9,660.01, and A. W. Chilcote bid off 240

acres for the aggregate sum of $5,906.67. Eighty acres had been previously sold on the other execution also, to A. W. Chilcote, for a sufficient sum to pay the judgment on which the execution was issued, and another judgment and certain taxes which were claimed to be liens prior to plaintiff's judgment, and leaves a balance to apply on the special execution of $1,041.35. Ten acres of the land remained unsold. Four hundred acres of the land bid off by the defendant were included in his mortgages; 15 acres, which sold for $60, were not. The defendant's bid was just two-thirds of the appraised value of the land bid on by him.

Prior to the sale it had been agreed between the said A. W. Chilcote, who was president of the said Farmers and Merchants' Bank, and defendant, that defendant should bid off the land mortgaged to him, and hold it to be resold at private sale for the benefit of the banks, and they should settle with him for the amount of his mortgage, and pay any money it should be necessary for him to pay under his bid. But the said Chilcote had no authority to make such an arrangement in behalf of plaintiff, and plaintiff was in no way a party thereto, and refused to assent to it; and directed the sheriff to demand of defendant the full amount of his bid, which he did and the defendant refused to pay, claiming that at least his legal right was to have the amount then due on his mortgages, which was $7,687.95, deducted from his bid, on the ground that they were prior and superior to plaintiff's lien, under his decree, and should first be paid out of the proceeds of the sale, and also claimed that other judgments for small amounts were likewise superior to plaintiff's and should be paid before plaintiff's. For somewhat similar reasons the said Chilcote also refused to pay his bid. And the sheriff made his return on the execution showing the levy, advertisement, appraisement, sale and demand on the purchasers for the amounts of their bids and their refusal to pay, and that therefore the writ was returned, nothing made, and signed such return, but retained the execution in his possession.

At the next term of the court, to wit, January 26, 1872, on motion of defendant Conger, and other defendants in the foreclosure case, after a hearing before the court, the parties being represented by counsel, it was ordered by the court that the decree of plaintiff be so modified that it should not have the effect to postpone, cut off, bar or foreclose any liens of said defendants which were prior or superior to plaintiff's or the other defendants, or to render them subject or inferior thereto.

April 8, 1872, the sheriff (still having possession of the execution) and the defendant and said Chilcote made a settlement in relation to said sales, on the theory that under the law, all liens of record at the time of the execution of the mortgages to the banks, and the taxes due on the land at the time of the sheriff's sale, and all the costs in the case, should first be paid out of the proceeds of the sale of the lands on plaintiff's execution, and that only the balance remaining should be given to the banks. Said Chilcote provided by payment or guaranty for all said supposed prior liens except the mortgages to defendants (and the taxes and costs were paid, by whom does not appear), and then receipted to the sheriff as president of the Farmers' and Merchants' Bank, and as agent for plaintiff, for the amount which was supposed to be going to the banks on both sales, which they made out to be $3,128.71. And the sheriff executed deeds to the said purchasers for the respective tracts of land bought by them; and made an addition to his return on the execution, giving the particulars of the manner in which the said lands had been thus settled. The said Chilcote was not, however, authorized to make any such settlement in behalf of plaintiff or to receive any money going to plaintiff on account of said sales, and the sheriff had no other authority, so far as plaintiff was concerned, than such as he had by virtue of his office, and said execution.

| | | |
|---|---:|---:|
| If this was the legal way for defendant to pay his bid of............... | | $9,660 01 |
| To allow him to deduct the amount due him on his mortgage, to wit:......$7,687 95 | | |
| The taxes he found due on the land.... 369 60 | | |
| The costs of the case paid in proportion to the amount of his bid.......... 126 17 | | 8,173 72 |
| Then there would be only a balance of | | $1,486 29 |

going from him to the satisfaction of the banks.

If, on the other hand, the proceeds of the sale, after deducting costs, should have been applied to the payment of the judgment of plaintiff and the amount due the Farmers and Merchants' Bank in Washington, to the demands of each in accordance with the terms of the decree, then there would have been going from defendant to plaintiff at the time of the sale, $4,266.47, and to the Farmers and Merchants' Bank $5,277.37.

Plaintiff has yet realized but little from the sale to Chilcote, and there is still due plaintiff under the decree over the amount that would be thus going to it from defendant.

Defendant has conveyed the land thus bought by him by quit-claim to said Chilcote, and he has re-sold and conveyed part or all of the same to other parties.

And upon these facts the court bases the following conclusions of law:

I. It is only the interest in the land upon which the judgment or decree operates as a lien, that can be sold on the execution issued thereon; prior liens unprovided for by the decree remain upon the land in the hands of the purchaser; junior liens attach to the surplus after the satisfying the execution.

II. The execution plaintiff, even under a decree of foreclosure of a mortgage, is entitled first to the proceeds of the sale of property on his execution unless the decree provides otherwise, and it is not the duty of the sheriff to ascertain whether there may or not be other liens of record, prior to

that on which the execution issued, and if so pay them first out of the proceeds of the sale. The provision of section 3667 of the Revision, that if there are any other liens on the property sold or other payments secured by the same mortgage, they shall be paid off in their order, applies only to the junior liens attaching to the surplus after the satisfaction of the execution, plaintiff's judgment, unless the decree itself provides otherwise.

III. It is therefore immaterial in determining the legal rights of the parties in this case, whether the decree of plaintiff had or not the effect of giving the lien of plaintiff and the other bank priority over those of the defendant under his mortgages. If his liens were prior then it was only the equities of redemption that were sold by the sheriff, and for which the defendant bid the $9,660, and his lien remained on the land and was not transferred to the purchase-money. If his liens were inferior, then they could only attach to the surplus, and in either event the proceeds of the sale should go, first to the satisfaction of the execution on which the sale was made.

IV. It was not necessary in order for defendant to become the purchaser, that he should bid the full two-thirds of the appraised value of the land; if there were other liens prior to plaintiff's, under section 3360 of the Revision, it was only necessary that the amount of the bid added to the liens should make two-thirds of the appraised value.

And if defendant bid the large amount he did, under the impression that he must bid the two-thirds of the appraised value, to purchase, and that it was the entire interest in the land, unincumbered of all liens, that he was buying, and not simply an equity of redemption, and that the proceeds of the sale would be applied in satisfaction of the liens in their order, whether senior or junior to that of the decree, then it was a mistake of law; and if he could be relieved against it at all, he could not be, at least, without having the sale set aside, in order that the land might be re-sold. Or if he bid the $9,660 on account of the agreement with Chilcote, that his pur-

chase should be in trust for the banks and that they would pay his mortgages, and believed such an agreement was by authority of plaintiff, whereas Chilcote had authority only to bind his own bank by such an agreement, and not the plaintiff, then his remedy would have been to apply to be released from his bid, and have the sale set aside on the ground of a mistake of fact; but as he has secured a deed for the land, made no offer to restore it to its status before the sale, but has conveyed it, and it has now passed into the hands of other parties, and it is out of his power to make restitution, he must abide by his bid so far as plaintiff's interests are affected thereby.

V. The settlement with the sheriff and Chilcote to have him receipt to the sheriff for what they considered would be still due from defendant, was not, even to that extent, a settlement or payment of plaintiff's demands. The sheriff, after he had made complete service of the execution, and indorsed his return thereon, and the thirty days had expired within which he should have returned it to the clerk's office, and plaintiff had instituted suit against the defendant to recover the amount of his bid, had no authority, under the execution, to make any settlement with defendant.

It was, however, legitimate and proper for said Chilcote, in view of the rights of his bank under the decree, to make the agreement he did make with regard to the purchase, and also to make the settlement with co-defendant and the other lien-holders, so far as the amount given to his bank was concerned, and such agreement and settlement is a complete defense in this case, to the extent of the proportion of the purchase-money due from the defendant, that would otherwise have been going to the Farmers and Merchants' Bank.

The costs of the case to the extent they were settled by defendant or for him out of his bid should be allowed as a credit thereon.

Plaintiff is entitled to interest at six per cent per annum on the proportion of defendant's bid going to plaintiff from the date of the sale.

It is therefore ordered and adjudged by the court that the plaintiff have and recover of the defendant the sum of $4,564.26, and the costs of this suit, taxed at $20.15, and that there be taxed with the costs $15 to the clerk for reporting a part of the evidence in the case, under the order of the court. And that in default of the payment of said judgment, plaintiff have execution therefor."

To which finding of facts, conclusions of law, and rendition of judgment, defendant at the time excepted.

*Patterson & Rhinehart* for the appellant.

*H. & R. Ambler* for the appellee.

COLE, J. — Only two questions are made here in the argument, by appellant's counsel. It is first insisted that the bid was made by the defendant under a valid understanding by all the parties interested, that only the excess of the bid over the amount due him on his mortgage should be paid; and also, that whatever may have been the fact respecting the authority of Chilcote to bind the plaintiff, aside from the agreement of the two banks to share, *pro rata*, in the proceeds of the foreclosure, that this fact alone made them jointly interested and thereby authorized Chilcote to bind the plaintiff. The evidence in the case is not properly before us, and hence we cannot determine the fact anew, but must accept the finding as conclusive. The agreement of the two banks to share *pro rata* in the proceeds does not make them joint parties — they have several and respective shares, and are not joined and identified in the one whole.

1. MORTGAGE.

Again, it is urged that if there was a mistake as to the authority of Chilcote, and the right of the defendant to first pay off his own mortgage, this would give the defendant the right to have the bid set aside and not enforced. This might be true if the defendant had asked it and offered to place the parties in *statu quo;* or, possibly, even if he had offered to account for the proceeds

2. JUDICIAL SALE.

of the resale by him, provided such resale was made in good faith before notice of the mistake. But nothing of this kind appears. Surely, the defendant could not resell the land and place it beyond the reach of the plaintiff, and then have the sale set aside, or the payment of the bid not enforced because of the mistake. He must be diligent after the discovery of the mistake, and must also offer to do equity.

Affirmed.